UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Tammy Lee Benoit

    v.                                       Case No. 18-cv-61-SM
                                           Opinion No. 2018 DNH 239
Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

**O R D E R**

Tammy Benoit moves to reverse the decision of the Acting Commissioner of the Social Security Administration ("SSA") to deny her application for Social Security disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), is necessarily affirmed.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the standard of review that applies when an applicant claims that an SSA adjudicator made a factual error,

> [s]ubstantial-evidence review is more deferential than it might sound to the lay ear: though certainly "more than a scintilla" of evidence is required to meet the benchmark, a preponderance of evidence is not. Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted). Rather, "[a court] must uphold the [Acting Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam).

Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In addition, "'issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Acting Commissioner],' and 'the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.'" Id. (quoting Rodriguez, 647 F.2d at 222). Thus, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could

justify a different conclusion, so long as it is supported by substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 13, is part of the court's record and is summarized here, not repeated in full.

In July of 2015, Benoit applied for DIB, claiming that she had become disabled on April 3, 2014, as a result of anxiety, bipolar disorder, depression, severe mood disorder, tennis elbow on the right side, scoliosis,[1] pain in her right ankle, and lower-back arthritis. On the date of her application, she was 50 years old, and had worked as a dishwasher and dietary aide at a nursing home, as a bartender, and as a cashier.

In October of 2015, Dr. Robert McGan, a non-examining state-agency consultant, reviewed Benoit's medical records. Based upon that review, Dr. McGan assessed Benoit's physical residual functional capacity ("RFC").[2] He determined that she

---

[1] Scoliosis is "[a]bnormal lateral and rotational curvature of the vertebral column." <u>Stedman's Medical Dictionary</u> 1734 (28th ed. 2006).

[2] "[R]esidual functional capacity 'is the most [a claimant] can still do despite [his or her] limitations.'" <u>Purdy</u>, 887 F.3d at 10 n.2 (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for supplemental security income that is worded identically to 20 C.F.R. § 404.1545(a), which governs claims for DIB) (brackets in the original).

could lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, sit (with normal breaks) for about six hours in an eight-hour workday, and push and/or pull the same amount she could lift and/or carry. With respect to postural activities, Dr. McGan opined that Benoit had an unlimited capacity for climbing ramps and stairs, and for balancing, but could only occasionally climb ladders, ropes, or scaffolds; stoop; kneel; crouch; or crawl. He identified no manipulative, visual, communicative, or environmental limitations.

Also in October of 2015, Dr. William Kirmes performed a consultative physical examination on Benoit.[3] In the report on his examination, Dr. Kirmes indicated diagnoses of: (1) very mild scoliosis; (2) chronic low-back pain; (2) mild pes planus of the right foot;[4] (4) ankle pain secondary to flatfoot; and (5) elbow pain from epicondylitis,[5] which had resolved. In the

---

[3] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the SSA's] request." 20 C.F.R. § 404.1519.

[4] Pes planus is a synonym for flatfoot. See Stedman's, supra note 1, at 1468.

[5] Epicondylitis is "[i]nflammation of an epicondyle." Stedman's, supra note 1, at 653. An epicondyle is "[a] projection from a long bone near the articular extremity above or upon the condyle." Id. A condyle "[a] rounded articular surface at the extremity of a bone." Id. at 428.

section of his report devoted to limitations, Dr. Kirmes stated
that Benoit could: (1) bend occasionally; (2) walk 100 yards or
more; (3) lift 20-25 pounds occasionally with both arms; (4) sit
for 30 minutes without difficulty; (5) stand for 45 to 60
minutes without difficulty; and (6) carry 25 to 30 pounds
occasionally.

In October of 2015, Dr. Denise Moquin performed a
consultative psychological examination on Benoit.  She gave
diagnoses of unspecified anxiety disorder, unspecified mood
disorder, and unspecified personality disorder.  With respect to
Benoit's then-current level of functioning, Dr. Moquin provided
the following findings:

> **a) Activities of daily living:** . . . Despite symptoms
> endorsed, the claimant is able to properly care for
> personal affairs, shop, cook, drive[], pay bills,
> maintain her residence, and care for grooming and
> hygiene.
>
> **b) Social functioning:** . . . Due to the severity of
> psychological symptoms, the claimant lacks the
> capacity to interact appropriately and communicate
> effectively with family, friends, co-workers, people
> in authority over her, and people in the community.
>
> **c) Understanding and remembering instructions:** . . .
> [T]he claimant has the ability to understand and
> remember both short and simple instructions, in
> addition to more complex instructions.
>
> **d) Concentration and task completion:** . . . [T]he
> claimant has the ability to maintain attention and
> concentration to complete tasks.
>
> **e) Reaction to stress, adaptation to work or work-like
> situations:** . . . [T]he claimant has the ability to

tolerate stresses common to a work setting, make
simple decisions, maintain attendance, and adhere to a
schedule.  She lacks the capacity to interact
appropriately with people in authority over her at
this time, due to the severity of symptoms.

Administrative Transcript (hereinafter "Tr.") 411-12.

In November of 2015, Dr. Russell Phillips, a non-examining
state-agency consultant, reviewed Benoit's medical records,
including Dr. Moquin's report, and conducted both a psychiatric
review technique ("PRT") assessment and an assessment of
Benoit's mental RFC.[6]

As part of his PRT assessment, Dr. Phillips found that
Benoit had: (1) mild restrictions on her activities of daily
living; (2) moderate difficulties in maintaining social
functioning; (3) moderate difficulties in maintaining
concentration, persistence, or pace; and (4) no repeated
episodes of decompensation each of extended duration.  Those
four areas of mental functioning, in turn, correspond to the so-
called paragraph B criteria for the impairments of affective
disorders, anxiety-related disorders, and personality disorders,
as those impairment were described in SSA regulations that were
in force when Dr. Phillips performed his PRT assessment.  Those
regulations, however, were replaced as of January 17, 2017.

---

[6] The SSA uses the PRT to evaluate the severity of mental
impairments.  See 20 C.F.R. § 404.1520a.

Turning to his assessment of Benoit's mental RFC, Dr. Phillips first determined that Benoit had no limitations on understanding or memory. With respect to concentration and persistence, Dr. Phillips determined that Benoit had no significant limitations on six of eight abilities and moderate limitations on the other two.[7] He offered the following explanation: "The claimant can maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision." Tr. 85. With respect to social interaction, Dr. Phillips determined that Benoit had no significant limitation on one of five abilities, moderate limitations on three abilities,[8] and a marked limitation on the remaining ability.[9] He offered the following explanation: "She can tolerate the minimum social demands of simple-task settings; she cannot tolerate sustained contact with the general public."

---

[7] Dr. Phillips found that Benoit had moderate limitations on her abilities to: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) work in coordination with or in proximity to others without being distracted by them.

[8] Dr. Phillips found that Benoit had moderate limitations on her abilities to: (1) accept instructions and respond appropriately to criticism from supervisors; (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (3) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

[9] Dr. Phillips found that Benoit had a marked limitation on her ability to interact appropriately with the general public.

Tr. 86.  With regard to adaptation, Dr. Phillips determined that
Benoit had no significant limitations on three of four abilities
and had a moderate limitation on the other one.[10]  He offered the
following explanation: "She can tolerate simple changes in
routine, avoid hazards, travel independently, and make/carry out
simple plans."  Id.

After the SSA denied Benoit's application for DIB, she
received a hearing before an ALJ.  At the hearing, which was
held on February 2, 2017, the following exchange ensued between
Benoit and her counsel:

> Q  Okay, and would you be okay interacting with
> people at work?
>
> A  No, no, just do your work and leave me alone.
> I just want to do my work, I don't want to chit chat,
> I don't want to have no conversation, no social, just
> work, that's it.  I don't like to socialize with
> people.
>
> Q  So, if you had a supervisor come in and check
> on your work, how would that –
>
> A  Check on my work, and then moving on.
>
> Q  And what if there were problems in the way you
> were doing it?
>
> A  Just tell me what I'm doing wrong, and I'll
> fix it and just move along.

Tr. 68.

---

[10] Dr. Phillips found that Benoit had a moderate limitation
on her ability to respond appropriately to changes in the work
setting.

Later, the ALJ took testimony from a vocational expert ("VE") to whom he posed several hypothetical questions. In the first one, the ALJ posited an individual who had the limitations that Dr. McGan identified in his physical RFC assessment and the limitations that Dr. Phillips identified in his mental RFC assessment. The VE testified that a person with those limitations could not do Benoit's previous work, but could perform the jobs of housekeeper, merchandise marker, and drycleaner.

In a second hypothetical question, the ALJ posited a person with the same physical limitations as the subject of the first question, but he modified the mental limitations in the following way:

> I'm looking at this psychological examination by
> Denise [Moquin] at 7F [i.e., Tr. 409-13]. Would you
> please assume, in terms of . . . social interactions .
> . . a need to work in almost a socially isolated
> setting, so without any regular interactions with
> coworkers or the general public, and an ability to
> tolerate very brief instructions from a supervisor,
> but not to regularly interact. An ability to
> understand, remember, and carry out short, simple
> instructions, we'll say one to three step
> instructions, as well as somewhat more complex
> instructions, so we'll say . . . moderately complex
> four to five step instructions, an ability to maintain
> attention and concentration to complete tasks for two-
> hour blocks . . . in a normal eight-hour day, and to
> tolerate normal work stressors in a routine work
> environment. So, really, the significant difference
> there is more in the social realm. Given that
> additional set of limitations, let's look at the jobs
> of housekeeper, and merchandise marker, and

drycleaner, could those jobs still be performed, or
not?

Tr. 72-73. The VE testified that even with the more restrictive
limitation on social functioning that the ALJ posited in his
second question – a limitation that closely tracks the testimony
that Benoit gave at her hearing in response to inquiry by her
counsel – a person could still perform the jobs of housekeeper,
merchandise marker, and drycleaner.

In his third hypothetical question, the ALJ retained the
mental limitations from his second question, but reduced the
physical RFC to conform to Benoit's hearing testimony:

> I think she said standing up to about an hour [in] a
> workday in increments of maybe up to 30 minutes at a
> time, with a need to sit down for a similar period
> after that, but overall, let's assume standing/walking
> and sitting more consistent with sedentary work, with
> [the] ability to alternate a position at will at least
> every 30 minutes.

Tr. 73. The VE testified that the ALJ's additional physical
limitations would eliminate the three jobs she had previously
identified, but that a person with those new limitations could
perform the jobs of: (1) inspector, hand packager; (2) sub-
assembler; and (3) bench assembler.

After the hearing, the ALJ issued a decision in which he
determined that Benoit had three severe impairments:
degenerative changes of the lumbar spine, a mood disorder, and
an anxiety disorder. After he determined that none of Benoit's

impairments, alone or in combination, met or medically equaled
the severity of any impairment included in the SSA's list of
impairments that are per se disabling, the ALJ gave the
following assessment of Benoit's RFC:

> [T]he claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> except that she is limited to occasional climbing,
> stooping, kneeling, crouching and crawling.  She can
> maintain attention for 2-hour blocks and persist at
> simple tasks over an 8-hour day and a 40-hour
> workweek.  She can tolerate normal supervision and
> minimal social demands for simple tasks, but only
> brief interactions with co-workers and the general
> public.  She can tolerate simple changes in routine
> and she is aware of hazards.

Tr. 18.  Thereafter, the ALJ determined that Benoit was unable
to perform her past work but could perform the jobs of
housekeeper, merchandise marker, and drycleaner.  Accordingly,
he found that from April 3, 2014, through the date of his
decision, which was March 15, 2017, Benoit was not under a
disability.

In a letter dated April 29, 2018, just over a year after
the ALJ rendered his decision in this case, the SSA acted on a
subsequent application from Benoit and notified her that she was
entitled to monthly disability benefits, based upon a
determination that she had become disabled on March 11, 2017.
The notice of award provides no information about the
application that resulted in the award, and the record includes
none of the evidence upon which that decision was based.

## III. Discussion

A. <u>The Legal Framework</u>

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. § 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that Benoit was not under a disability from April 3, 2014, through March 15, 2017, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for DIB, an ALJ is required to employ a five-step sequential evaluation process. <u>See</u> 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

<u>Purdy</u>, 887 F.3d at 10 (quoting <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920, which outlines the

same five-step process as the one prescribed in 20 C.F.R. §
404.1520).

At the first four steps in the sequential evaluation
process, the claimant bears both the burden of production and
the burden of proof.  See Purdy, 887 F.3d at 9 (citing Freeman
v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen
v. Yuckert, 482 U.S. 137, 146 (1987).  She must prove she is
disabled by a preponderance of the evidence.  See Mandziej v.
Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.
Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[11]  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the claimant or other witness; and
> (3) the [claimant]'s educational background, age, and
> work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

B.  Benoit's Claims

Benoit claims that the ALJ erred by: (1) failing to
consider Dr. Kirmes's opinions regarding her physical RFC; and

---

[11] At step five, the burden of proof shifts to the Acting
Commissioner, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y
of HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the Acting
Commissioner's step-five determination is not at issue here, so
there is no need to describe the mechanics of step five.

(2) mishandling the medical opinions regarding her mental RFC. She also argues that the SSA's subsequent determination that she became disabled on March 11, 2017, requires the SSA to reopen the ALJ's determination, in this case, that she had not been under a disability between April 3, 2014, and March 15, 2017. None of those claims has merit.

### 1.   Dr. Kirmes's Opinions

In his decision, the ALJ gave great weight to Dr. McGan's opinion on Benoit's physical RFC and also "noted that Dr. McGan's opinion [was] supported by consultative physician Dr. Kirmes' opinion and clinical observations."  Tr. 20.  Benoit claims that the ALJ erred by failing to specifically consider Dr. Kirmes's opinion or assign weight to it.  According to Benoit, the ALJ's error requires a remand because Dr. Kirmes's opinion included limitations that call for a sit/stand option that may have precluded the performance of the three occupations the ALJ found that she could perform, i.e., housekeeper, merchandise marker, and drycleaner.  The manner in which the ALJ handled Dr. Kirmes's opinion does not merit a remand.

The court begins by assuming that Benoit is correct in her contentions that: (1) the ALJ erred in his determinations that Dr. Kirmes's opinion was consistent with Dr. McGan's opinion; and (2) Dr. Kirmes's opinion included limitations that required a sit/stand option.  However, a remand to correct those presumed

errors would be an empty exercise. That is because the ALJ's

third hypothetical question posited a person who needed to

alternate between sitting and standing every 30 minutes, and the

VE testified that a person with that additional limitation could

perform three different jobs. Because claimant points to

nothing in Dr. Kirmes's opinion that would support any

limitations that are more restrictive than those the ALJ

incorporated into his third hypothetical question, a remand on

this issue would be an empty exercise. And because remand would

be an empty exercise, it is not warranted. See Newman v.

Berryhill, No. 17-cv-455-LM, 2018 WL 2215513, at *4 (D.N.H. May

15, 2018) (citing Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656

(1st Cir. 2000) ("[A] remand is not essential if it will amount

to no more than an empty exercise."). Accordingly, Benoit's

first claim provides no grounds for relief.

### 2. Opinions on Benoit's Mental RFC

In his decision, the ALJ gave great weight to Dr.

Phillips's opinion and "less weight" to the opinion of Dr.

Moquin. Benoit frames her second claim this way: "The ALJ . . .

improperly rejected the opinion of the examining psychologist,

Dr. Moquin and erred in his assessment of [her] mental RFC."

Cl.'s Mot. to Reverse (doc. no. 12) 6. She elaborates:

> There are two problems with the ALJ's approach.
> First, he relied upon Dr. [Phillips's] opinion.
> However, Dr. [Phillips's] opinion contains errors that

made it unreliable and thus not "substantial" evidence
to support the ALJ's opinion. Second, the ALJ failed
to consider the important differences in the analysis
under the old mental listings and under the new mental
listings.

Id. The court considers in turn each of the two "problems" on

which Benoit bases her second claim.

a. Weighing the Medical Opinions

The ALJ had this to say about why he gave "great weight" to

Dr. Phillips's opinion:

While [he] did not examine the claimant, [he] reviewed
the available medical record and even the more recent
evidence does not indicate any significant change in
the claimant's functioning.

Tr. 20. And this is why he gave "less weight" to Dr. Moquin's

opinion:

[H]er opinion that the claimant lacks the capacity to
interact with others is not supported by the totality
of the record. The claimant has described several
instances of irritability and outburst[s] of anger,
but she has been looking for work and she has
maintained relationships with various family members
as well as a neighbor.

Id.

Benoit claims that ALJ committed a reversible error by

relying upon Dr. Phillips's opinion because: (1) Dr. Phillips

did not provide adequate support for his opinion; and (2) Dr.

Moquin's opinion was both supported by her observations and

findings and was consistent with the record as a whole.[12]  There
is some reason to hesitate when considering the ALJ's evaluation
of Dr. Phillips's opinion – he gave it "great weight," but
without addressing <u>any</u> of the factors that SSA adjudicators are
directed to consider when evaluating medical opinions, <u>see</u> 20
C.F.R. § 404.1427(c)(1)-(6).  Even so, a remand to correct that
error would also fall within the "empty exercise" category.

At her hearing, Benoit testified that she was capable of
limited interactions with supervisors, even in the context of
responding to criticism.  In his second hypothetical question,
the ALJ posited a person who had to work in "almost a socially
isolated setting," Tr. 72, but who "had an ability to tolerate
very brief instructions from a supervisor," <u>id.</u>  The VE
testified that a person with only that very limited capacity for
workplace social interaction could perform the jobs of
housekeeper, merchandise marker, and drycleaner.  That
constitutes substantial evidence supporting the ALJ's decision,
and, because the ALJ's decision is supported by Benoit's own
testimony, his contestable decision to give great weight to Dr.

---

[12] In her brief, Benoit asserts this part of her claim
somewhat inartfully, as a criticism of Dr. Phillips for stating
that Dr. Moquin's opinion was supported by her findings, but
then offering an opinion that had less restrictive limitations
than those in Dr. Moquin's opinion.

Phillips's opinion is of no practical moment and provides no

ground for a remand.  See Newman, 2018 WL 2215513, at *4.

### b.  New Regulations

Benoit also claims that this matter should be remanded

because after Dr. Phillips rendered his opinions, but before the

ALJ made his decision, the SSA replaced the regulations that

describe the criteria that various mental impairments must meet

in order to be deemed per se disabling at step three of the

sequential evaluation process.  Claimant is correct in noting

the change in the SSA's regulations.  See Revised Medical

Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01,

2016 WL 5341732, at *66138 (Sept. 26, 2016) (promulgating

regulations incorporating new mental-impairment listings and

explaining that they applied to both "new applications filed on

or after the effective date of the rules [i.e., January 17,

2017], and to claims that are pending on or after the effective

date").  But claimant's reliance upon the new regulations is

unavailing.

If Benoit were claiming that the case should be remanded

because the ALJ erred at step three, by determining that neither

of her two severe mental impairments met or medically equaled

the severity of a listed impairment under the new regulations,

then her invocation of the regulatory change would have some

analytical impact.  But she does not argue that the ALJ made an

erroneous step-three determination.[13]  Rather, she is claiming

that Dr. Phillips's reliance upon the old regulations to perform

his PRT/step-three assessment somehow invalidated his assessment

of her RFC.

But "PRT assessments and RFC assessments . . . are two

different things."  Swain v. Berryhill, No. 18-cv-145-PB, 2018

WL 5342714, at *6 (D.N.H. Oct. 29, 2018) (citing Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2,

1996)).  The PRT is used to assess severity at step two and to

determine whether an impairment meets or medically equals a

listing at step three, while "[t]he mental RFC assessment used

at steps [four] and [five] of the sequential evaluation process

requires a more detailed assessment by itemizing various

functions contained in the broad categories found in paragraphs

B and C of the adult mental disorders listings in 12.00 of the

Listing of Impairments."  Id.

Here, Dr. Phillips performed both a PRT assessment, for use

at steps two and three of the sequential evaluation process, and

_____

[13] To be sure, claimant devotes considerable attention to an
argument that Dr. Phillips's step-three findings under the old
listings cannot be used to make step-three findings under the
new listings, a proposition for which she cites no authority,
but she does not take the next step and claim that she actually
had, nor has she produced evidence from which the ALJ should
have found that she had, a listing-level mental impairment.
Hence, the court does not understand Benoit to be claiming that
the ALJ made an error at step three.

an RFC assessment. Claimant, however, does not explain how Dr.
Phillips's reliance upon the old mental-impairment listings at
step three had any bearing on the "more detailed" RFC assessment
he subsequently performed. Moreover, she cites no authority for
the proposition that an ALJ considering an application for
benefits on January 17, 2017, was obligated to seek a new
medical opinion before performing a step-three analysis or
assessing a claimant's RFC.[14] Accordingly, while Benoit is
correct in noting the SSA's revision of its mental-impairment
listings at a point when her claim was pending before the ALJ,
she has not shown that application of the regulatory revision
requires a remand.

Beyond that, even if the change in the SSA' regulations did
somehow taint Dr. Phillips's RFC assessment, the ALJ's decision
does not rest on that assessment. As explained in the previous

---

[14] In support of her claim that the ALJ erred by failing to
obtain new medical opinion evidence after the regulations were
revised, Benoit cites three cases that stand for the proposition
that "since bare medical findings are unintelligible to a lay
person in terms of residual functional capacity, [an] ALJ is not
qualified to assess residual functional capacity based on a bare
medical record." Gordils v. Sec'y of HHH, 921 F.2d 327, 329
(1st Cir. 1990) (per curiam) (citing Rosado v. Sec'y of HHS, 807
F.2d 292, 293 (1st Cir. 1986); Berrios v. Sec'y of HHS, 796 F.2d
574, 576 (1st Cir. 1986); Perez Lugo v. Sec'y of HHS, 794 F.2d
14, 15 (1st Cir. 1986)). But the ALJ did not assess claimant's
RFC based on a bare medical record; he relied upon Dr.
Phillips's RFC assessment and, as already noted, Benoit has not
shown that Dr. Phillips's RFC assessment was in any way
compromised by his use of the previous listings at step three.

section, claimant's own hearing testimony provides substantial evidence for the RFC in the ALJ's second hypothetical question, and the VE testified that a person with that RFC could perform the jobs of housekeeper, merchandise marker, and drycleaner. That, in turn, amounts to substantial evidence supporting the ALJ's decision that claimant was not disabled within the meaning of the Act.

In sum, there is nothing about the SSA's adoption of new mental-impairment regulations that supports a request for remand.

### 3.   The SSA's Subsequent Award of Benefits

Benoit's third claim is that the SSA's "later decision, finding [her] disabled as of March 11, 2017, demonstrates that the ALJ erred in finding her not to be disabled as of March 15, 2017."  Cl.'s Mot. to Reverse (doc. no. 12) 12.  Relying on the doctrine of "administrative collateral estoppel," id., she argues that: (1) the ALJ's adverse decision in this case must be reopened "because there was new and material evidence, later considered by the [SSA], finding that she was, in fact, disabled prior to the date of the ALJ's decision on [this] application," id. at 13; and (2) the finding from the subsequent application must be applied to the claim pending in this case.  Benoit's third claim is a non-starter.

Benoit relies on two cases in which courts held that "[a]bsent evidence of an improvement in a claimant's condition, a <u>subsequent</u> ALJ is bound by the findings of a <u>previous</u> ALJ." <u>Drummond v. Comm'r of Soc. Sec.</u>, 126 F.3d 837, 842 (6th Cir. 1997) (emphasis added) (citing <u>Lively v. Sec'y of HHS</u>, 820 F.2d 1391, 1392 (4th Cir. 1987)). But, rather than arguing that the SSA decisionmaker who granted her subsequent application for benefits was bound by the earlier finding of the ALJ in this case, <u>i.e.</u>, that she was not disabled at any point prior to March 15, 2017, she appears to argue that the ALJ in this case was bound by findings made by a subsequent decisionmaker more than a year after he made his decision.

Actually, the administrative collateral estoppel doctrine might operate to call into question the validity of the SSA's decision to award her benefits as of March 11, 2017. Perhaps recognizing that risk, claimant concedes, in her reply brief, that "[t]he [Acting] Commissioner may well be correct that collateral estoppel does not technically apply on these facts." Doc. no. 17, at 13. But she continues: "[T]hat does nothing to demonstrate that these decisions are not in direct conflict during this period of time [<u>i.e.</u>, the four days between March 11 and March 15, 2017]. In fact, they are in conflict." <u>Id.</u> But any "conflict" has already been resolved in Benoit's favor. Notwithstanding the determination by the ALJ in this case, that

she was not disabled between March 11 and March 15, 2017, she has since been awarded disability benefits for that four-day period. Thus, there is no additional remedy that could prove more favorable to Benoit, and her third claim provides no reason to remand the case.

## IV. Conclusion

Because the ALJ committed neither a legal nor a factual error in evaluating Benoit's claim, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision, document no. 12, is denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 14, is granted. The clerk of the court shall enter judgment in favor of the Acting Commissioner and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

December 3, 2018

cc: Alexandra M. Jackson, Esq.
    Karen B. Fitzmaurice, Esq.
    Penelope E. Gronbeck, Esq.
    Kevin Parrington, Esq.